IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES R. WILLIAMS, | : | 1:16-cv-02529-JEJ |
| | : | |
| Plaintiff, | : | |
| | : | Hon. John E. Jones III |
| | : | |
| PENNSYLVANIA STATE | : | |
| EDUCATION ASSOCIATION, | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM & ORDER**

### April 25, 2017

Presently before the Court is Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 7). For the reasons that follow, the Court denies the motion. The Court shall stay adjudication on the remainder of the proceedings pending the outcome of *Ladley et al. v. Pennsylvania State Education Association*, No. CI-14-08552 (Jun. 30, 2015), which is being litigated in the Court of Common Pleas of Lancaster County.

I.  **FACTUAL BACKGROUND**

Plaintiff James R. Williams ("Plaintiff" or "Williams") is a public school teacher at West Middlesex School District. (Doc. 1, ¶ 7). Defendant Pennsylvania State Education Association ("Defendant" or "PSEA") is a non-profit corporation made up of professional and support professional employees of school and health

1

entities. (Doc. 1, p. 1). PSEA is an "employee organization" as defined by 71 P.S. § 575. (Doc. 8, p. 1). Plaintiff is not a part of the PSEA, but is required to pay a compulsory union fee known as a "fair share fee" by the collective bargaining agreement governing his employment. (Doc. 9, p. 1).

In December 2015, Plaintiff filed an objection to the payment of the fair share fee based on bona fide religious grounds pursuant to 71 P.S. § 575(e)(2). (Doc. 1, ¶ 13). Subsection (h) of that same provision requires bona fide religious objectors to pay the equivalent of a fair share fee to a "nonreligious charity agreed upon by the nonmember and the exclusive representative." 71 P.S. § 575(h). Plaintiff indicated that he wanted his funds to go to Pennsylvania Foundation for Life. (Doc. 1, ¶ 14). In February 2016, Defendant accepted Plaintiff's religious objection as bona fide, but rejected his selection of the Pennsylvania Foundation for Life. (Doc. 1, ¶ 15). Defendant suggested other possible charities for Plaintiff and asked Plaintiff to select one. (Doc. 8, p. 3). Plaintiff asked for clarification as to why Defendant would not accept his selected charity. (Doc. 1, ¶ 17). Defendant replied that it would not donate Plaintiff's payment to the Pennsylvania Foundation for Life because this charity would further his religious beliefs. (Doc. 1, ¶ 18). Defendant again included a list of charities for Plaintiff to choose from, but communications between the parties ceased after that. (Doc. 8, p. 3). In July 2016, Defendant adopted additional procedures to resolve disputes regarding the

selection of a charity. (Doc. 8, p. 3-4). These procedures include binding arbitration. (*Id.*).

## II. PROCEDURAL HISTORY

Plaintiff filed this action on December 22, 2016. (Doc. 1). The claim is based on the application of the Pennsylvania Fair Share Fee Law, 71 P.S. § 575 ("§575"). Plaintiff claims that § 575 violates his rights under the Equal Protection clause of the Fourteenth Amendment, the Establishment Clause of the First Amendment, the Equal Protection clause of the Pennsylvania Constitution, and due process under the First and Fourteenth Amendments to the United States Constitution and the Pennsylvania Constitution, and brings his constitutional claims pursuant to 42 U.S.C. § 1983. (Doc. 1, p. 1-2). Plaintiff also claims that the binding arbitration agreement in § 575 violates his rights under 42 U.S.C. § 1983, and finally, that Defendant has violated his rights under § 575 itself. (*Id.*). Defendant filed the instant Motion to Abstain, Dismiss, or in the Alternative, to Stay the proceedings on January 27, 2017. (Doc. 7). Plaintiff filed his brief in opposition to the Defendant's motion on February, 10, 2017. (Doc. 9). The time for filing a reply has long passed. *See* Local Rule 7.7. The Motion is therefore ripe for our review.

## III. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) contends that the complaint

fails to assert a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). In considering the motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). To resolve the motion, a court generally should consider only the allegations in the complaint, as well as "any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation and internal quotation marks omitted).

In general, a Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration omitted)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To survive a motion to dismiss, "a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that the defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertion[s]." *Twombly*, 550 U.S. at 564, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* at 680. Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the

merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* at 234 (quoting *Twombly*, 550 U.S. at 556).

## IV. DISCUSSION

Defendant argues it is not a state actor for purposes of § 1983, and therefore Plaintiff's claims cannot be sustained. (Doc. 8, p. 6). Defendant also argues that this court should abstain from exercising jurisdiction in this case pursuant to the *Pullman* doctrine because this case presents issues of state law that may be soon resolved in state court. *See Ladley et al. v. Pennsylvania State Education Association*, No. CI-14-08552 (Jun. 30, 2015). Plaintiff responds by arguing that Defendant PSEA is a state actor for purposes of § 1983 and that this court should not abstain from hearing this case because of its "virtually unflagging" obligation to hear cases where jurisdiction exists. (Doc. 9, pp. 5, 9).

The parties both acknowledge that this Court recently rendered a ruling in *Misja v. Pennsylvania State Education Association*, No. 1:15-cv-1199 (M.D. Pa. Mar. 28, 2016) (Doc. 28), a case concerning virtually identical facts and legal issues. In *Misja*, this Court denied the defendant's motion to dismiss and to

abstain, and stayed the proceedings pending the outcome in *Ladley*. *Misja*, No. 1:15-cv-1199, Doc. 28.

The issues pending before this Court concerning the PSEA's status as a state actor, as well as the application of the *Pullman* Doctrine pending the *Ladley* decision, mirror the *Misja* case almost identically. *See Misja*, No. 1:15-cv-1199, Doc. 28, p. 12. Therefore, although we acknowledge Defendant's disagreement with our decision in *Misja*, we are not presented with any compelling reason to depart from our holding in the *Misja* matter. We begin by first addressing the claim that the PSEA is not a state actor.

### A. The PSEA as a State Actor

As in the *Misja* case, Defendant PSEA argues that it is not a state actor and does not act under color of state law, and therefore, Williams cannot assert § 1983 claims against it. *See id.* at p. 12. In order to show a prima facie violation of § 1983, a plaintiff must show that the wrongdoers acted under color of state law. 42 U.S.C. § 1983. The Third Circuit has said that "[t]he color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. Of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). The Third Circuit has also instructed that "[w]here the actors are not state or municipal officers, but are private individuals or associations, we still must address whether their activity can nevertheless be deemed to be under color of law. The inquiry is

fact-specific." *Id.* (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)). A plaintiff must demonstrate two things to prove the state action requirement. First, "the conduct at issue must either be mandated by the state or must represent the exercise of a state-created right or privilege. Second, the party who engaged in the challenged conduct must be a person or entity that can 'fairly be said to be a state actor.'" *White v. Communications Workers of America, AFL-CIO, Local 1300*, 370 F.3d 346, 350 (3d Cir. 2004) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)).

In *Misja*, we acknowledged that the analysis of whether an actor acts under color of state law is a difficult one. *Misja*, No. 1:15-cv-1199, Doc. 28, p. 13. We noted that the Supreme Court has not decided the issue of whether actions taken by a union pursuant to an agency shop clause constitute state action, and that as a result, a circuit split has developed regarding the issue.[1] As we said in *Misja*, the decisions leading to this split involved only private-sector unions, not public-sector unions as we have here. *See Kolinske v. Lubbers,* 712 F. 2d 741 (D.C.Cir. 1983); *See Beck v. Communication Workers of America*, 776 F. 2d 1187 (4th Cir. 1985).

---

[1] The Third Circuit, along with the Second Circuit and D.C. Circuit, has concluded that when unions negotiate and implement agency shop clauses, they are not acting under color of state law. *See White v. Communications Workers of America*, 370 F. 3d 346 (3d Cir. 2004); *see also Price v. UAW*, 927 F. 2d 88 (2d Cir. 1986); *Kolinske v. Lubbers*, 712 F. 2d 741 (D.C.Cir. 1983). However, the Fourth and First Circuits have concluded that this same behavior does constitute state action. *See Beck v. Communication Workers of America*, 776 F. 2d 1187 (4th Cir. 1985); *see also Linscott v. Millers Falls Co.*, 440 F. 2d 14 (1st Cir. 1971).

Regarding public-sector unions, the Supreme Court has ruled on the merits of § 1983 claims in *Chicago Teachers Union Local No. 1 v. Hudson*, 106 S. Ct. 1066 (1986) and *Knox v. Service Employees Int'l Union Local 1000*, 132 S. Ct. 2277 (2012), but did so without addressing the issue of state action.

In *Misja*, we examined the Third Circuit's approach to public-sector unions and private-sector unions. *Misja*, No. 1:15-cv-1199, Doc. 28, pp. 14-15. Regarding public-sector unions, the Third Circuit considered a § 1983 claim brought against the PSEA in *Otto v. Pennsylvania State Educ. Association-NEA*, 330 F. 3d 125 (3d Cir. 2003). We noted that the Third Circuit passed on deciding whether the PSEA was a state actor for purposes of § 1983, leading us to believe the issue was not raised on appeal. *Misja*, No. 1:15-cv-1199, Doc. 28, p. 15. The Court in *White v. Communications Workers of America*, 370 F. 3d 346 (3d Cir. 2004) found that implementation of agency shop clauses by private unions is not state action, and did not comment on the validity of § 1983 cases in the context of public-sector unions. *White*, 370 F. 3d at 347. Ultimately, we said that "[t]hough we are tempted to extend the Third Circuit's rationale in *White* to a public-sector union as well, we find it imprudent to turn the tide against what is a clearly established pattern, if not precedent, in favor of hearing § 1983 claims against public-sector unions." *Misja*, No. 1:15-cv-1199, Doc. 28, p. 18. We noted that the authority to enforce the agency shop provision in the collective bargaining

agreement is an agreement between the union and the state. *Id.* The union, therefore, relies on the state to enforce the agreement and execute it, bringing the action within the realm of state action governed by § 1983. *Id.*

We therefore do not stray from our ruling in *Misja* and reject the Defendant's argument that PSEA is not a state actor for purposes of § 1983.

### B. Abstention based on the *Pullman* Doctrine

Defendant PSEA also argues that this court should abstain, or in the alternative, stay the proceedings, pursuant to the *Pullman* doctrine. (Doc. 8, p. 10). As the Defendant recognizes, this identical argument was made and rejected in *Misja*. We find no compelling reason to alter our reasoning or decision and will not labor to analyze the *Pullman* issue again here. In short, despite the fact that the elements of the *Pullman* doctrine are applicable, this Court takes notice of the "virtually unflagging" obligation of the federal courts to adjudicate claims. *Planned Parenthood*, 220 F. 3d at 149. We acknowledge that "[a]bstention is an 'extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it'." *Id.* We will therefore implement an "interim step," as we did in *Misja*, by instituting a stay of proceedings pending the resolution in *Ladley*. *Misja*, No. 1:15-cv-1199, Doc. 28, p. 33.

### C. Defendant's Remaining Arguments for Dismissal

Having acknowledged that implementation of a stay of proceedings is the most appropriate step in this matter, we must still address Defendant's remaining arguments for dismissal of Plaintiff's claims. Defendant argues that Plaintiff has failed to state a claim that PSEA violated § 575 and that Plaintiff's claim based on the binding arbitration clause must fail. We will address each in turn.

### i. Mr. Williams' alleged violation of Section 575

Defendant PSEA argues that Williams fails to state a claim that Defendant PSEA violated § 575 by arguing that Williams violated § 575, not the PSEA. (Doc. 8, p. 9). The language at issue is as follows:

> When a challenge is made under subsection (e)(2), the objector shall provide the exclusive representative with verification that the challenge is based on bona fide religious grounds. If the exclusive representative accepts the verification, the challenging nonmember shall pay the equivalent of the fair share fee to a nonreligious charity agreed upon by the nonmember and the exclusive representative.

71 P.S. § 575(h). The parties each argue that the other violated the phrase "agreed upon," the same language that, in *Misja*, we determined was vague. *Misja*, No. 1:15-cv-1199, Doc. 28, p. 30. In his complaint, Plaintiff argues that the PSEA violates the language of this statute, which calls for agreement, by creating a policy of mandatory arbitration and a provision allowing the PSEA to send Plaintiff's funds to a charity other than that of his choice. (Compl. ¶ 67). Defendant argues that Plaintiff Williams violated the plain language of the statute himself by

11

refusing to "agree" to one of the charities it suggested, and bringing this lawsuit. (Doc. 8, p. 10).

As discussed in *Misja*, this court believes § 575 is written in a way that invites the type of debate presented in this case. It is true that the plain meaning of the word "agree" implies that both parties must cooperate to some degree. It also implies that neither Plaintiff nor Defendant can force the other to submit. The word "agree" connotes mutual understanding and voluntariness. However, the plain meaning of "agree" does little to help either Plaintiff or Defendant in this case. By failing to come to an agreement, both parties may have violated § 575.

However, finding that both parties simultaneously violated the provision does nothing to relieve the current stalemate. To avoid this absurd result, the phrase "agreed upon" must have additional meaning attached to it to make it clear when a party has done enough to "agree." As of now, we cannot say that Defendant has sufficiently satisfied the provision simply because it provided a list of potential charities. Nor are we prepared to say that Plaintiff fails to state a claim because he exercised his rights by filing this lawsuit. We are not finding that Defendant violated § 575, but rather that Plaintiff has pled sufficiently to survive a motion to dismiss. The ambiguity of the phrase "agreed upon" in § 575, and the lack of clarity as to how parties in a situation such as this are to agree, illustrate why it is necessary to stay this case pending the outcome of *Ladley*.

### ii. PSEA's Agreement not to Force Mr. Williams to Arbitrate

Lastly, Plaintiff claims that the arbitration provision of PSEA's procedures violates his rights to access the courts under § 1983. (Doc. 1, ¶ 27). Defendant argues that this claim must fail because PSEA agreed not to subject him to binding arbitration, as required by § 575(g). (Doc. 8, p. 8). However, this argument triggers two critical issues. First, as Plaintiff pointed out in his brief, the Third Circuit has already held this particular provision of § 575(g) to be unconstitutional as applied. *See Hohe v. Casey*, 956 F.2d 399, 409 (3d Cir. 1992). As the basis for its reasoning, the Third Circuit cited *Pasty v. Board of Regents of Florida*, 457 U.S. 496, 516 (1982), saying that "exhaustion of state remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Id.* Clearly, Defendant could not enforce the arbitration provision, as it is effectively unenforceable.

Second, the Supreme Court has long recognized that "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000). In other words, when a defendant is accused of wrongdoing, it cannot simply cease to engage in that activity and then claim that the case is moot because there is no more ongoing harm. *Id.* For this reason, we find Defendant's argument for dismissal based on its agreement not to force Williams

to arbitrate unpersuasive. Because the PSEA procedures still include the unconstitutional arbitration agreement, Plaintiff has a valid claim.

V.  **CONCLUSION**

For the reasons set forth, we shall deny the Defendant PSEA's Motion to Dismiss. We shall stay any further adjudication of this matter pending the resolution of the state court proceedings in *Ladley et al. v. Pennsylvania State Education Association*, No. CI-14-08552 (Jun. 30, 2015).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1. Defendant Pennsylvania State Education Association's Motion to Dismiss (Doc. 7) is **DENIED** in its entirety.

2. The case is **STAYED** pending the outcome of *Ladley et al. v. Pennsylvania State Education Association*, No. CI-14-08552 (Jun. 30, 2015), in the Court of Common Pleas of Lancaster County.

3. The parties shall alert the Court as to the resolution of the said *Ladley* case, and jointly file a copy of the county court's decision on the docket upon its entry.

s/ John E. Jones III  
John E. Jones III  
United States District Judge